# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE ANTHONY PARKS, | CV F 05-741 OWW DLB HC |
| Petitioner, | FINDINGS AND RECOMMENDATIONS REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| L. CHRONES, Warden, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND[1]

Following a jury trial in the Fresno County Superior Court, Petitioner was convicted of one count of possession of a firearm and misdemeanor obstruction of a peace officer. The trial court also found true the allegations that Petitioner suffered two prior serious felony convictions within the meaning of the three strikes law. The trial court also found true the allegations that Petitioner had served five prior prison terms for prior felony convictions. The trial court struck one prior serious felony conviction and sentenced Petitioner to an aggregate term of 11 years in state prison.

Petitioner filed a timely notice of appeal to the California Court of Appeal, Fifth

---

[1] This information is derived from the petition for writ of habeas corpus and Respondent's answer to the petition.

1

Appellate District.  (Lodged Docs. A-C.)  On March 19, 2004, the Fifth District Court of Appeal affirmed Petitioner's conviction and sentence.  (Lodged Doc. D.)

Petitioner filed a timely petition for review in the California Supreme Court, which was denied on June 9, 2004.  (Lodged Docs. E, F.)

Petitioner filed numerous post-conviction collateral challenges, several of which were filed in the same court on the same date.

On January 28, 2002, Petitioner filed a petition for writ of habeas corpus, case number F039809, with the Fifth District Court of Appeal.  (Lodged Doc. G.)  The petition was denied on January 31, 2002.  (Lodged Doc. H.)

On February 19, 2002, Petitioner filed a petition for writ of habeas corpus, case number S104380, in the California Supreme Court, which was denied on June 12, 2002.  (Lodged Docs. I, J.)

On January 28, 2002, Petitioner filed a petition for writ of habeas corpus, case number F039807, with the Fifth District Court of Appeal.  (Lodged Doc. K.)  The petition was denied on January 31, 2002.  (Lodged Doc. L.)

On February 6, 2002, Petitioner filed a petition for writ of habeas corpus, case number F039874, with the Fifth District Court of Appeal.  (Lodged Doc. M.)  The petition was denied on February 14, 2002.  (Lodged Doc. N.)

On February 11, 2002, Petitioner filed a petition for writ of habeas corpus, case number F039894, in the Fifth District Court of Appeal.  (Lodged Doc. O.)  The petition was denied on February 21, 2002.  (Lodged Doc. P.)

On February 14, 2002, Petitioner filed a petition for writ of habeas corpus, case number F039918, in the Fifth District Court of Appeal.  (Lodged Doc. Q.)  The petition was denied on February 21, 2002.  (Lodged Doc. P.)

On February 14, 2002, Petitioner filed another petition for writ of habeas corpus, case number F039917, in the Fifth District Court of Appeal.  (Lodged Doc. S.)  The petition was denied on February 22, 2002.  (Lodged Doc. T.)

On March 1, 2002, Petitioner filed a petition for writ of habeas corpus, case number

1  S104768, with the California Supreme Court.  (Lodged Doc. U.)  The petition was denied on
2  June 12, 2002.  (Lodged Doc. V.)
3       On October 29, 2002, Petitioner filed a petition for writ of habeas corpus, case number
4  F041766, in the Fifth District Court of Appeal.  (Lodged Doc. W.)  The petition was denied on
5  November 7, 2002.  (Lodged Doc. X.)
6       On April 3, 2002, Petitioner filed a petition for writ of habeas corpus, case number
7  F042712, with the Fifth District Court of Appeal.  (Lodged Doc. Y.)  The petition was denied on
8  April 10, 2003.  (Lodged Doc. Z.)
9       On June 26, 2003, Petitioner filed a petition for writ of habeas corpus, case number
10 F043326, in the Fifth District Court of Appeal.  (Lodged Doc. AA.)  The petition was denied on
11 July 10, 2003.  (Lodged Doc. BB.)
12      On February 4, 2004, Petitioner filed a petition for writ of habeas corpus, case number
13 F044844, in the Fifth District Court of Appeal.  (Lodged Doc. CC.)  The petition was denied on
14 February 19, 2004.  (Lodged Doc. DD.)
15      On February 13, 2004, Petitioner filed a petition for writ of habeas corpus, case number
16 S122617, in the California Supreme Court.  (Lodged Doc. EE.)  The petition was denied on
17 December 15, 2004.  (Lodged Doc. FF.)
18      On March 1, 2004, Petitioner filed a petition for writ of habeas corpus, case number
19 F045004, in the Fifth District Court of Appeal.  (Lodged Doc. GG.)  The petition was denied on
20 March 4, 2004.  (Lodged Doc. HH.)
21      On June 10, 2004, Petitioner filed a petition for writ of habeas corpus, case number
22 F045690, in the Fifth District Court of Appeal.  (Lodged Doc. II.)  The petition was denied on
23 June 17, 2004.  (Lodged Doc. JJ.)
24      On October 1, 2004, Petitioner filed a petition for writ of habeas corpus, case number
25 F046415, in the Fifth District Court of Appeal.  (Lodged Doc. KK.)  The petition was denied on
26 October 21, 2004.  (Lodged Doc. LL.)
27      On or about October 4, 2004, Petitioner filed a petition for writ of habeas corpus, case
28 number S128182, in the California Supreme Court.  (Lodged Doc. MM.)  The petition was

denied on August 17, 2005.  (Lodged Doc. NN.)

On July 5, 2005, Petitioner filed a petition for writ of habeas corpus, case number F048328, in the Fifth District Court of Appeal.  (Lodged Doc. OO.)  The petition was denied on July 14, 2005.  (Lodged Doc. PP.)

On August 8, 2005, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (Lodged Doc. QQ.)  Respondent submits that this petition is still pending.

Petitioner filed the instant federal petition for writ of habeas corpus on June 8, 2005. Respondent filed an answer to the petition on February 3, 2006. (Court Doc. 11.)  Petitioner did not file a traverse.

## STATEMENT OF FACTS[2]

Procedural History

> [Petitioner] Wayne Anthony Parks was charged in an amended criminal information with possession of a firearm ([Cal.] Pen. Code, § 12021, subd. (a)(1),[3] count one), receiving stolen property (§ 496, subd. (a), count two), and misdemeanor obstruction of a peace officer (§ 148, subd. (a), count three).  The amended information alleged [Petitioner] had two prior serious felony convictions within the meaning of the three strikes law and five prior prison term enhancements.
>
> The trial was set to begin on December 6, 2001.  On December 7, 2001, [Petitioner] successfully motioned the court to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806.  The trial court cautioned [Petitioner] that it would not grant a continuance. [Petitioner] encountered difficulty in gaining access to a law library and subpoenaing witnesses.  On December 10, 2001, the trial court granted [Petitioner's] motion for a continuance as well as [Petitioner's] request for an investigator.
>
> On December 17, 2001, [Petitioner] made a second motion for a continuance. [Petitioner] renewed his motion for a continuance the next day. [Petitioner] and his investigator had only located two of the four witnesses [Petitioner] felt he needed for his defense.
>
> After conducting a full hearing on the matter, the trial court found that [Petitioner] had two witnesses under subpoena who had been at the scene of [Petitioner's] arrest.  The other two witnesses were not available. [Petitioner] believed one of the two had been on vacation and sought an additional two-week continuance.  The trial court suggested that from what [Petitioner] represented, the potential witness who had been on vacation may have returned. [Petitioner] did not object to this statement.

---

[2] The following summary of facts are taken from the opinion of the California Court of Appeal, Fifth Appellate District appearing as Lodged Doc. D, of the Answer to the Petition for Writ of Habeas Corpus.  The Court finds the state Court of Appeal's summary is a correct and fair summary of the facts of the case.

[3] All further statutory references are to the California Penal Code, unless otherwise indicated.

[Petitioner] explained that the two unavailable witnesses observed what [Petitioner] saw, though he was not sure exactly what either one of them would say. The court denied [Petitioner's] request for a two-week continuance finding that based on [Petitioner's] representations, the testimony of the two missing witnesses was likely to be cumulative.

On December 20, 2001, [Petitioner] was found guilty after a jury trial of counts one and three. [Petitioner] was acquitted of count two.[4] In a bifurcated proceeding conducted on January 16, 2002, the court found true allegations [Petitioner] had two prior serious felony convictions within the meaning of the three strikes law and that five prior prison term allegations were true. On April 12, 2002, the trial court struck one prior serious felony conviction. The court sentenced [Petitioner] to prison for three years on count one which it doubled to six years pursuant to the three strikes law. The court imposed five consecutive one-year prison terms as prior prison term enhancements for a total prison term of 11 years.

On appeal, [Petitioner] contends the trial court's denial of [his] request for a second continuance interfered with [his] ability to represent himself and constituted an abuse of the court's discretion.

Facts

On May 27, 2001, Randall Jensen reported the theft of his 1990 Ford Bronco. There was a .25-caliber Liberty pistol in the vehicle. Jensen identified People's Exhibit 14 as the missing weapon. The gun had its magazine but was not loaded with ammunition when the Bronco was stolen.

On September 7, 2001, at 10:30 p.m., Fresno Police Department Detective Dennis Lowry was on patrol in a marked police car with Officer Frank Borrero searching for Leroy Manning who had violated his parole. As they drove down East Clinton, they saw [Petitioner] and another man walking. [Petitioner] resembled Manning. [Petitioner] and the other man began walking rapidly away into an apartment complex. The other man walked out of Lowry's view. [Petitioner] stopped.

Though it was dark, the area was well illuminated by the patrol car spotlights. [Petitioner] threw an object from his hand to the cement sidewalk. Lowry heard a clanking sound that sounded like metal hitting the ground. [Petitioner] was between 15 and 20 feet away. As soon as he dropped the object, [Petitioner] began to run away with Lowry pursuing him. Lowry encountered James Greathouse, the man who had been walking with [Petitioner], and detained him to review his identification. Greathouse was cooperative and followed Lowry's direction to sit.

Lowry resumed his pursuit of [Petitioner] who was later arrested by Officers Borrego and Sanchez.[5] Lowry immediately returned to the place [Petitioner] had discarded the metal object and found a handgun. The gun was People's Exhibit 14 which belonged to and was identified by Mr. Jensen. The gun was loaded with a live round of ammunition in the chamber and other rounds in the magazine clip. A police technician could not lift usable fingerprints from the gun or the magazine.

Trenell Lowe was present when police arrived at the apartment complex on Clinton. Lowe fled immediately because he was wanted by the police. Before fleeing, Lowe saw [Petitioner] standing in a group of three or four other men.

---

[4] On December 21, 2001, [Petitioner's] request for the appointment of counsel was granted.

[5] Officer Borrego did not see [Petitioner] drop any object.

5

>   There were also women present. Lowe did not see [Petitioner] drop anything. Lowe was convicted of a felony in 1991.
>   Sharlise Lampkin was also present when the police chased and arrested Parks. Lampkin said that someone she knew as "T" threw down a gun when police arrived. Lampkin did not see [Petitioner] throw anything to the ground. Lampkin stated that "T" was not [Petitioner].

(Lodged Doc. D, Opinion 2-4.)

## DISCUSSION

A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997; Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.  Standard of Review

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The AEDPA altered the standard of review that a federal habeas court must apply with respect to a state prisoner's claim that was adjudicated on the merits in state court. Williams v.

Taylor, 120 S.Ct. 1495, 1518-23 (2000).  Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade,123 S.Ct.1166 (2003) (disapproving of the Ninth Circuit's approach in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)); Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).  "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer, at 1175 (citations omitted).  "Rather, that application must be objectively unreasonable." Id. (citations omitted).

While habeas corpus relief is an important instrument to assure that individuals are constitutionally protected, Barefoot v. Estelle, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391-3392 (1983); Harris v. Nelson, 394 U.S. 286, 290, 89 S.Ct. 1082, 1086 (1969), direct review of a criminal conviction is the primary method for a petitioner to challenge that conviction. Brecht v. Abrahamson, 507 U.S. 619, 633, 113 S.Ct. 1710, 1719 (1993).  In addition, the state court's factual determinations must be presumed correct, and the federal court must accept all factual findings made by the state court unless the petitioner can rebut "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Purkett v. Elem, 514 U.S. 765, 115 S.Ct. 1769 (1995); Thompson v. Keohane, 516 U.S. 99, 116 S.Ct. 457 (1995); Langford v. Day, 110 F.3d 1380, 1388 (9th Cir. 1997).

The court looks to the last reasoned state court decision as to the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).  Where, as here, the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

///

C.   Procedural Default

Respondent argues that all four of Petitioner's claims are procedurally defaulted. As Respondent submits all four of Petitioner's claim are essentially variations of the same claim, i.e. that use of his juvenile conviction to enhance his current sentence under California's Three Strikes law was unconstitutional and a violation of an agreement he had with the juvenile court. The constitutionality of using the conviction (claims 1 and 3) was rejected by the Fifth District Court of Appeal on July 10, 2003, in a silent denial. (Lodged Docs. CC, DD.) On December 15, 2004, the California Supreme Court denied the same claims on the merits and with citations to In re Clark, 5 Cal.4th 750 (1993); In re Swain, 34 Cal.2d 300, 304 (1949); and People v. Duvall, 9 Cal.4th 464, 474 (1995). (Lodged Docs. EE, FF.)

The violation of the alleged juvenile court promise or plea bargain agreement (claims 2 and 4) was rejected by the Fifth District Court of Appeal on October 1, 2004, in a silent denial. (Lodged Docs. KK, LL.) On August 17, 2005, the California Supreme Court denied the claims on the merits and with citations to In re Clark, 5 Cal.4th 750 (1993) and In re Miller, 17 Cal.2d 734. (Lodged Docs. MM, NN.)

A federal court will not review claims in a petition for writ of habeas corpus if the state court has denied relief on those claims by a state law that is independent of federal law and adequate to support the judgment. A federal court will not review a petitioner's claims if the state court has denied relief of those claims pursuant to a state law that is independent of federal law and adequate to support the judgment. Ylst v. Nunnemaker, 501 U.S. 797, 801, 111 S.Ct. 2590, 2592 (1991); Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546, 2553-54 (1989); See also Fox Film Corp. v. Muller, 296 U.S. 207, 210, 56 S.Ct. 183, 184 (1935). A state court's refusal to hear the merits of a claim because of petitioner's failure to follow a state procedural rule is considered a denial of relief on independent and adequate state grounds. Harris v. Reed, 489 U.S. 255, 260-61, 109 S.Ct. 1038, 1042 (1989). This doctrine of procedural default is based on the concerns of comity and federalism. Coleman, 501 U.S. at 730-32, 111 S.Ct. at 2554-55.

There are limitations as to when a federal court should invoke procedural default and

refuse to evaluate the merits of a claim because the petitioner violated a state's procedural rules. Procedural default can only block a claim in federal court if the state court "clearly and expressly states that its judgment rests on a state procedural bar." Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038,1043 (1989).

In addition, a federal court may only impose a procedural bar on claims if the procedural rule that the state used to deny relief is "firmly established and regularly followed." O'Dell v. Thompson, 502 U.S. 995, 998, 112 S.Ct. 618, 620 (1991) (statement of Blackmun joined by Stevens and O'Connor respecting the denial of certiorari); Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 857 (1991); James v. Kentucky, 466 U.S. 341, 348-51, 104 S.Ct. 1830, 1835-37 (1984). The state procedural rule used must be clear, consistently applied, and well-established at the time of the petitioner's purported default. Fields v. Calderon, 125 F.3d 757, 760 (9th Cir. 1997); Calderon v. United States Dist. Court (Bean), 96 F.3d 112, 129 (9th Cir. 1996), *cert. denied,* 117 S.Ct. 1569. However, even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

The Court finds that the California Supreme's Court citation to In re Clark was independent. In Bennett v. Mueller, the Ninth Circuit found that California's untimeliness rule was independent after In re Robbins, 18 Cal.4th 770, 780 (1998). See Bennett v. Mueller, 322 F.3d 573, 581-83 (9th Cir. 2003). In the instant case, the new claims were raised in 2004, six years after Robbins was decided in 1998. The Court further finds that the California Supreme Court's citation to In re Clark was adequate. For a state procedural default to be adequate, it must be well-established and consistently applied. Id. at 583. While the ultimate burden of proving adequacy rests with the respondent, the petitioner must place the state's affirmative defense of independent and adequate state procedural grounds at issue "by asserting specific factual allegations that demonstrate the inadequacy of the state procedure." Id. In this case, Respondent has adequately asserted a procedural bar; however, Petitioner has not placed the

9

affirmative defense at issue. Therefore, under Bennett, the procedural bar is both independent and adequate. Further, Petitioner makes no showing of actual prejudice and as explained below, because there is no merit to his claims Petitioner cannot demonstrate that a fundamental miscarriage of justice will result if the Court does not review the claims. Accordingly, this Court is barred from reviewing Petitioner's claims. In any event, even if the Court were to review the claims they are without merit.

D. Claims 1 and 3: Use of Juvenile Conviction to Enhance Sentence Violated Federal Constitutional Rights

Petitioner contends that the use of his juvenile conviction to enhance his sentence under California's Three Strikes law was illegal and a violation of his Sixth Amendment Rights. This claim was presented to the to (1) the Fifth District Court of Appeal, which issued a summary denial (Lodged Docs. CC & DD); and (2) the California Supreme Court summarily denied the claim with citations to In re Clark, 5 Cal.4th 750 (1993); In re Swain, 34 Cal.2d 300, 304; People v. Duvall, 9 Cal.4th 464, 474 (1995). (Lodged Doc. FF.)

In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In United States v. Tighe, 266 F.3d 1187, 1194 (9th Cir. 2001), the Ninth Circuit held that the Apprendi "prior conviction" exception only applied to those convictions which allowed a jury trial and proof beyond a reasonable doubt. Thus, in Tighe, it was held that nonjury juvenile adjudications were not "convictions" falling within the Apprendi exception. Id. at 1194-95. However, the Court finds that the Ninth Circuit's more recent opinion in Boyd v. Newland, 467 F.3d 1139 (9th Cir. 2006), as amended on other grounds, persuasive authority on Petitioner's claim.[6] In Boyd, the petitioner's sentence was increased from three to six years based on a nonjury juvenile adjudication. There, the Ninth Circuit recognized its prior holding in Tighe that nonjury juvenile adjudications did not fall in the prior convictions exception outlined in the Apprendi. Id. at 1151-1152. The Court went on to acknowledge that California courts have

---

[6] To date, the Supreme Court has not resolved the conflict.

1  disagreed with its holding in Tighe stating, "[t]hey conclude that Apprendi does not preclude the
2  use of nonjury juvenile adjudications to enhance the sentence of an adult offender." Id. at 1152
3  (citing among others, People v. Bowden, 102 Cal.App.4th 387 (2002).)  Further, the Court
4  acknowledged, that "the Third, Eighth, and Eleventh Circuits have held the *Apprendi* 'prior
5  conviction' exception includes nonjury juvenile adjudications, which can be used to enhance a
6  defendant's sentence." Id. (citing United States v. Burge, 407 F.3d 1183, 1190-91 (11 Cir.
7  2005), cert. denied, 126 S.Ct. 551 (2005); United States v. Jones, 332 F.3d 668, 696 (3d Cir.
8  2003) and United States v. Smalley, 294 F.3d 1030, 1033 (8th Cir. 2002).)  The Ninth Circuit
9  concluded,

> Although we are not suggesting that *Tighe* was incorrectly decided, as some of these varying interpretations of *Apprendi* suggest, the opinion does not represent clearly established federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In general, Ninth Circuit precedent remains persuasive authority in determining what is clearly established federal law. *See Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) (stating that Ninth Circuit case law may be used to help determine clearly established federal law). But, in the face of authority that is directly contrary to *Tighe*, and in the absence of explicit direction from the Supreme Court, we cannot hold that the California courts' use of Petitioner's juvenile adjudication as a sentencing enhancement was contrary to, or involved an unreasonable application of, Supreme Court precedent.

16  Id. at 1152.
17       For the reasons explained in Boyd, this Court finds that in light of the lack of authority
18  from the Supreme Court resolving the issue, it cannot find that the state courts' rejection of
19  Petitioner's claim was contrary to, or involved an unreasonable application of, clearly established
20  Supreme Court authority.  Petitioner's claim fails on the merits.
21  E.    Claims 2 and 4: Breach of Plea Agreement
22       Petitioner contends that in 1979 when he suffered his juvenile conviction, the juvenile
23  court told him that once he was discharged from the California Youth Authority, the conviction
24  would never be used against him in the future.  Therefore, use of the juvenile conviction as a
25  "strike" prior to enhance his current sentence, is a violation of his plea bargain agreement.  This
26  claim was presented to (1) the Fifth District Court of Appeal, which summarily denied the claim
27  (Lodged Docs. KK & LL); and (2) the California Supreme Court which summarily denied the
28  claim with citations to In re Clark, 5 Cal.4th 750 and In re Miller, 17 Cal.2d 734. (Lodged Docs.

MM & NN.)

As Respondent submits, Petitioner's claim is conclusory in nature as Petitioner fails to demonstrate with evidence or otherwise that his 1979 plea to his juvenile conviction for assault with a firearm involved a promise that it would not be used in the future as a strike. Further, the Court has not found any proof substantiating the purported promise or plea bargain in the state court record. (See RT 455-482.)

To the extent that Petitioner argues that the alleged breach renders his current sentence unconstitutional, his claim must fail. When a plea agreement rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled. Santobello v. New York, 404 U.S. 257, 22 (1971). Here, there is no indication that any promise *not* to use the 1979 conviction was made during the plea negotiations. Accordingly, as there is no basis for finding that such a promise was included in the 1979 proceedings, the agreement was not violated by virtue of the current enhancement. Moreover, the sentence imposed under Three Strikes is not additional punishment for the prior convictions, but rather a stiffened penalty for the latest crimes. See Monge v. California, 524 U.S. 721, 728 (1998).

To the extent that Petitioner alleges that he had no knowledge at the time of his 1979 plea of the possibility that it could later be used to enhance a sentence, his claim must also fail. Due process requires that a defendant be informed of all the *direct* consequences of a guilty plea. Brady v. United States, 397 U.S. 742, 749 (1970). There is no due process violation where a trial court fails to inform the defendant of *collateral* consequences, such as the potential for enhancement in the future. United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982). Thus, Petitioner's lack of knowledge that the 1979 conviction could later be used to enhance a future sentence does not violate due process. Therefore, Petitioner's claim is wholly conclusory, and the state courts' determination of this issue was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus be DENIED; and

2.  The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendations is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **February 6, 2007**              **/s/ Dennis L. Beck**
3b142a                                              UNITED STATES MAGISTRATE JUDGE